LARSON, Respondent, v. CHICAGO, M. & ST. P. RY. COM-
PANY, Appellant.

(141 N. W. 353.)

1.  **Carriers—Injury to Passenger—Liability.**
    Where a train did not depart from a station until its schedule
    time, the carrier was not required to notify a passenger nearly
    a block away that the train was about to start, nor need train-
    men anticipate that he would attempt to board the train after it
    had started.

2.  **Carriers—Injury to Passenger—Assumption of Risk.**
    A passenger attempting to board a moving train leaving on
    schedule time, without invitation or direction of conductor or
    other trainmen in charge, assumes the hazards incident thereto,
    including ordinary movements of cars occasioned by testing
    air brakes or other proper operation of the train.

3.  **Carriers—Injury to Passenger—Negligence of Passenger.**
    Where danger of boarding a moving train is obviously great
    and imminent, the invitation of the conductor to a passenger
    to board it does not relieve him from contributory negligence;
    but if the apparent danger is slight the passenger may rely
    upon judgment of conductor.

4.  **Carriers—Injury to Passenger—Contributory Negligence—Ques-
    tion for Jury.**
    Whether a passenger, attempting to board a train on invita-
    tion of conductor, was guilty of contributory negligence depends
    upon the particular facts, and is a question for the jury.

5.  **Carriers—Injury to Passenger—Contributory Negligence—Speed
    of Train.**
    Speed of train is not a conclusive test, in law, of contributory
    negligence of a passenger attempting to board a moving train
    on conductor's invitation, unless going at such high speed that
    no ordinarily prudent person, with common understanding,
    would undertake the hazard.

6.  **Trial—Instructions—Assumption of Facts.**
    Where, in a suit for damages for injuries to a passenger
    attempting to board a moving train, the issue was whether the
    conductor or brakeman invited him to board the train, an in-
    struction that a passenger is warranted in obeying directions
    of trainmen in attempting to board the train, he was not guilty
    of contributory negligence unless he failed to use reasonable
    care, was erroneous in assuming that the trainmen did invite

him to board the train, and also as failing to submit to jury the issue whether such invitation was given, which issue, under the conflicting evidence, was for the jury.

7.  **Trial—Instructions—Misleading Instructions.**

   Where, in a suit for injuries to a passenger while boarding a moving train that had stopped at a station to permit passengers to alight for lunch, the issue was whether the trainmen invited the passenger to board the train, departing on schedule time, an instruction that if it was customary to allow passengers to so alight, and if, while he was procuring refreshments the signal was given for passengers to get aboard, and thereafter a reasonably sufficient time was not given by trainmen to enable him to board the train before starting, and by reason thereof he was injured, and if failure to give him time to get aboard was negligence, and but for the negligence he would not have been injured, the verdict must be for him, was prejudicially misleading for submitting the question whether the train started ahead of schedule time, concerning which the testimony was undisputed.  **Held,** further, it was erroneous as assuming that plaintiff was not given sufficient time to get aboard after warning that train was about to start; it was also erroneous as leading jury to believe defendant permitted passengers to alight for refreshments and go where they pleased, regardless of distance from the train, and that defendant should warn and give them sufficient time to reach the train before starting, no matter where they might be.

(Opinion filed May 10, 1013.)

Appeal from Circuit Court, Brown County.  Hon. FRANK McNULTY, Judge.

Action by Andrew G. Carson against the Chicago, Milwaukee & Puget Sound Railway Company, for damages for injury to plaintiff as a passenger.  From a judgment for plaintiff and from an order denying a new trial, defendant appeals.  Reversed and remanded for new trial.

*Porter & Grantham,* for Appellant.

There is no evidence of negligence or negligent act in the record, and the defendant's motion to direct a verdict upon that ground should have been granted.  So. Ry. Co. v. Johnson, 39 So. Rep. 376; Boston Elev. Ry. Co. v. Smith, 168 Fed. 628; Sanderson v. Boston Elev. Ry. Co., Mass., 80 N. E. 515; Allen v. N. Pac. Ry. Co., Wash., 77 Pac.

Plaintiff was guilty of contributory negligence.  Paulitsch v.

N. Y. Cent. & H. Ry. Co., N. Y., 6 N. E. 577; Solomon v. Manhattan Ry. Co., N. Y., 9 N. E. 430; Card v. Manhattan Ry. Co., N. Y., 9 N. E. 433; Hunter v. Cooperstown & S. V. R. Co., N. Y.

Contributory negligence of the plaintiff is not excused. Myers v .N. Y. Cent. & H. R. R. Co., 31 N. Y. Supp. 153; On second appeal, 34 N. Y. Supp. 807; Murphy v. Davis, Ga., 50 S. E., 99; Lindsay v. C. R. I. & P. R. Co., Ia., 20 N.

The court erred in its instruction to the effect that a passenger on a train is warranted in obeying the directions of the conductor in charge of the train or of a brakeman employed by the carrier in the conduct of such trains whose duty it is to stand at the entrance of such train and assist passengers in entering and alighting from such train.

Such instruction is misleading.

*Taubman & Williamson,* for Respondent.

If any act is directed by an agent of a railway company in charge at the particular spot, plaintiff is justified in obeying such direction, if it is within ostensible authority of such agent and not immediately dangerous and rash. Shearman & Redfield on Negligence, Vol. 2, Sec. 473; 6th Cyc. 639-643; See Bennett v. R. R. Co., 102 U. S. 577.

If the motion of the car was not very rapid, and the conductor directed, or even advised a passenger to get on or off without stopping the car, the latter would have a right to rely upon this advice. Ib. Sec. 520; St. L. I. M. & L. Railway Company v. Person, 49 Ark. 182; St. L. I. M. & L. Railway Company v. Cantrell, 37 Ark. 519.

The evidence discloses two acts of negligence on the part of the defendant. The first was the negligent starting or jerking of the car at the time the plaintiff was attempting to board it at the invitation of the conductor and brakeman; the second was the negligent starting of the train without giving plaintiff any reasonable opportunity to get on board or any warning. Gannon v. Chicago, Rock Island & Pacific Railroad Company, Ia., 177 N. W. 966; 23 L. R. A., N. S., 1061; Chi. R. I. & P. Ry. Co. v. Sattler, 90 N. W. Neb., 649; Bennett v. Railway Co., Ark., 102 S. W. 198; Price v. Railway Co., Tex., 106 S. W. 700; Glover v. Railway Co., Ky., 71 S. W. 630.

A passenger is not guilty of contributory negligence in boarding a moving train if he is acting under the instructions of an employe of the railway company, unless in so doing he rushes into apparent danger or fails to use such care and caution as a prudent man anxious to secure his own safety would use under the same circumstances. In this case the question of contributory negligence was for the jury. Gannon v. Chicago R. I. & P. Ry. Co., 117 N. W., Ia., 966; 23 L. R. A., N. S., 1061; Illinois Cent. Ry. Co. v. Glover, 71 S. W., Ky., 630; Pence v. Wabash Ry. Co., 90 N. W. Ia., 59; 6 Cyc. 639, and cases; 30 L. R. A., N. S., 274, note "Speed of car."

McCOY, J. This suit was instituted to recover damages for personal injury to plaintiff in the loss of a foot claimed to have been the result of defendant's negligence while plaintiff was attempting to board one of defendant's passenger trains at Mobridge, S. D., on September 21, 1910. There was a verdict and judgment in favor of plaintiff, and defendant appeals, assigning various errors.

There is not much conflict in the testimony, except upon one or two material points. Plaintiff, with some three companions, became a passenger on defendant's passenger train at Minneapolis, Minn., destined for McLaughlin, S. D. Mobridge is an intermediate station. The train arrived at Mobridge on schedule time at 10:35 a. m., central time, and was scheduled to depart at 9:45 a. m., mountain time, but in fact did not start to depart until about 9:52 some 17 minutes after arrival. Before and at the time of arrival, "ten minutes for lunch" was called in the train. At Mobridge the train crew—conductor, engineer, and brakemen— were changed, also the engine. After the arrival at Mobridge, plaintiff left the smoking car in which he had been riding and went to a saloon some 275 to 300 feet north and east of where said car was standing. Plaintiff remained at said saloon until the said train began to move on its departure. When he discovered the train moving, with a package of beer bottles in his hands, he ran to catch the train, and in so doing had to travel some 70 to 100 feet farther west than if the train had remained standing thus making a run of from 350 to 400 feet to reach his car, and, while in the act of boarding said moving car, he in some manner fell and his foot was caught between the wheel and the rail. At the time of

the accident the train was moving about five miles an hour. Before starting the train, the conductor gave the warning, "All aboard," on the platform and in the lunchroom in the depot. According to the custom of defendant road, it was the duty of the trainmen immediately upon starting in motion a passenger train, immediately after the change of engines, to test the air brake. This duty was performed by the engineer, as soon as the train was put in motion, applying the air, and the brakeman back on the train observing the effect thereof to ascertain whether or not the brake properly set on the wheels, and, in case the brake did properly operate, the rear brakeman then signaled the engineer to release the air. At about the time the accident occurred to plaintiff, the rear brakeman had completed his observation of the operation of the brakes and, about the instant of the accident, signaled the engineer to release the air. Along the side of this train, as it remained standing, was a brick platform; westward beyond the platform was a cinder walk about on the same level with the brick platform; the accident happened along or by the cinder walk 140 feet west from the depot. Plaintiff was an ordinarily active man 50 years of age.

The foregoing is a substantial statement of the undisputed circumstances surrounding the accident in question. The evidence on behalf of plaintiff, as to the circumstances of the accident, consisted of the testimony of one Perry, a hardware merchant of Mobridge, and the testimony of plaintiff. Plaintiff himself testified that when they got to Mobridge there was some talk about lunch; that they had their lunch in the seat with them; that, some three or four minutes after the train stopped, a brakeman, on the outside of the car, informed them through the window that they could get beer at that point; that they would have time to do so; that they had ten minutes and maybe more; that he (plaintiff) immediately proceeded to the saloon and purchased two bottles of beer; that when he was returning and had walked some 15 feet from the saloon door he saw the train start moving; that he saw the conductor and a brakeman on the platform by the train; that they motioned him to hurry; that he ran about as fast as he could; that, when he came near the train, either the brakeman or the conductor took his bottles of beer, and the conductor told him to jump on, and as he took hold of the handholds the train made a jerk and

his hand loosened and he swung around and his foot missed the step and went under the train and was caught between the wheel and the rail; that after the accident the train was immediately stopped, and he saw the conductor there then, the same conductor that had told him to jump on and who afterwards signaled for the train to proceed on its journey. Plaintiff testified that he was not intoxicated at the time of the accident and had not been drinking intoxicating liquors just prior thereto.

The witness Perry testified that his place of business was on the opposite side of the street from the saloon in question; that at the time of the accident he was walking from his place of business towards the depot, and about 100 feet therefrom; that he saw plaintiff come from the saloon door on a run and rush towards the then moving train; that he ran about as fast as he could; that he had a package in his hands; "only saw one man on the platform by the train; he grabbed both handrails; did not see him lift either foot as if to get on the step; saw him break loose and fall down; I ran and grabbed hold of him and held his limb while another gentleman done it up; it all happened quickly; I was about 110 feet from the place of the accident.

At the close of the plaintiff's evidence, and again at the close of all the evidence, defendant moved the court to direct a verdict for defendant on the ground that the accident by which plaintiff was injured was the result of plaintiff's contributory negligence and was not the result of any negligence on the part of defendant, or any of its agents or servants in charge of said train. The motions were denied and exceptions duly taken, and the ruling of the court thereon is now assigned and urged as error.

[1, 2] It is the contention of appellant that where it appears that a passenger train is moving at the speed of five miles an hour, as a matter of law, it was contributory negligence on the part of plaintiff to attempt to get on board this moving train that would prevent his recovery, although he might have been invited and directed to jump on such train by the conductor in charge. Appellant seeks to establish this rule as the law of this case. But for the testimony of plaintiff that the conductor and brakeman were present, prior to the happening of said accident, motioning to plaintiff to hurry, and assisting him by taking his package, and telling him to jump on, there is no reasonable theory on which

plaintiff might recover, or that would justify a verdict in his favor. Without this testimony of plaintiff, there is an absolute lack of any facts tending to show negligence, or any negligent act, either of commission or omission, on the part of defendant, or any of its agents or servants, that produced or resulted in said injury to plaintiff. This train did not move until after the expiration of the scheduled time for its departure, or until after the expiration of the time plaintiff claims he had been informed by some brakeman that it might depart; all the necessary warning required to notify passengers that said train was about to depart was given; defendant was under no duty to warn plaintiff in a saloon nearly a block away that this train was about to depart; defendant's agents and servants were under no duty to look out for or expect or anticipate that plaintiff would attempt to board said train after the same had started; plaintiff by attempting to board this moving train, without an invitation or direction from the conductor or some one in charge, would assume all the hazard incident to the undertaking, including all the ordinary jerkings and movements of the cars occasioned by testing the air brake or other proper operation of the train; there is no evidence but what this train was in all ordinary ways properly equipped and managed; and but for this testimony of plaintiff there is no evidence that the agents and servants of defendant were aware of the presence or attempt of plaintiff to board said moving train prior to the occurrence of said accident.

[3] The general rule of law seems to be that the getting on a moving train by a passenger is generally regarded as contrary to reasonable prudence; but, if it is done in response to the invitation or direction of a person in charge of the train, the passenger is said to be exonerated from fault, where the apparent danger is slight, and the real or actual danger is not readily discoverable by the passenger; on the theory that where danger is obvious, but slight, the passenger has the right to rely on the judgment of the conductor, whose duty and experience in regard to such matters may be presumed to justify an act which would otherwise constitute negligence. 6 Cyc. 638, 639, and cases cited. But this is not the rule where the real danger is readily and manifestly apparent to the judgment of a reasonably prudent person, and is of such a character as that no ordinarily prudent person would un-

dertake the hazard, notwithstanding the invitation or direction of the conductor, 6 Cyc. 340; Thompson on Negligence, §§ 2930, 2931, 2999, and 3027; Hutchinson on Carriers, §§ 1185, 1187, and 1221; Carr v. Railway Co., 98 Cal. 366, 33 Pac. 213, 21 L. R. A. 354, and note. Where the danger is obviously great and imminent, the invitation of the conductor or other servant in charge, as it seems to be generally held would not relieve the passenger from contributory negligence in boarding a moving train.

[4] Whether the passenger did in fact get on or off the moving train by the invitation or direction of the conductor, or, whether the obvious danger was great or slight, would depend upon the particular facts and circumstances of each particular case, and are questions that might or should, according to circumstances. be submitted to the jury under proper and appropriate instructions. In the case present, if the jury believed that the plaintiff testified truthfully as to the presence of the conductor and brakeman, and that they assisted, invited, and directed him to get on this moving train, immediately prior to the happening of the accident, then it became a question of fact for the jury, and not a question of law for the court, to be determined from all the attending circumstances, such as the lay of the platform, the lay of the ground beyond the platform, the distance from the platform or ground up to the steps, the position and construction of the handholds, the age and physical condition of the plaintiff, the speed of the train, the rapidity with which the train was increasing its speed, as to whether or not the apparent danger was slight or great, or whether or not plaintiff was guilty of contributory negligence in attempting to board this moving train, even though invited and directed to do so by the conductor. From all these circumstances it was also within the province of the jury to determine whether or not the act of the conductor in inviting and directing plaintiff to jump on said train, providing the ury believed that the conductor did so invite and direct plaintiff, was of itself a negligent act on the part of the conductor for which the railroad company might be held responsible. There might be great and imminent danger apparent in attempting to get aboard one train moving at five miles miles an hour, while the getting on another train going at the same speed would be attempted with but little apparent danger to the ordinarily active man of the age of 50.

[5]    The speed of the train is not a conclusive test, as a matter of law, of contributory negligence in such cases, unless going at such a high rate of speed that no ordinarily prudent person, with common understanding, would undertake the hazard, although upon invitation or direction of the conductor. We are of the opinion that the learned trial court did not err in submitting the case to the jury.

[6]    Defendant on its behalf offered the testimony of numerous witnesses, some of whom were its employes, and others of whom were residents of Mobridge, engaged in other business. The testimony submitted by defendant strongly tended to show that neither the conductor nor any brakeman in charge of said train motioned to, invited, directed, or assisted plaintiff to board said departing train, or were present and observed said accident to plaintiff; that the conductor then in charge of said train, after signaling the same to start, had gone into a baggage car, and was in said baggage car at the time plaintiff was pursuing said train and at the time of said accident; that this conductor had never seen plaintiff on that day prior to the accident; that the two brakemen were both engaged in observing the operation of the brakes at the time plaintiff was injured and did not see or know of his presence until he grabbed hold of said car in his attempt to board the train. The testimony of defendant further tended to show that plaintiff had been drinking intoxicating liquors just prior to his arrival at Mobridge; that plaintiff made inquiry of the news agent, through the window, after the train stopped on entering Mobridge, if they could obtain something to drink at that place, and was informed by the news agent that they could, if they hurried; that plaintiff went to said saloon and on his return, after the train had started, ran up to the train, gave his package to the news agent, and not to the conductor or a brakeman, and then attempted to mount the train, with another package of beer bottles in his right hand; that the news agent had no duty in connection with the operation of the train.

Upon the vital issue as to whether or not the conductor or brakeman assisted, invited, or directed plaintiff to jump on said moving train, no instructions were given to the jury. In no manner was the jury instructed to determine and find whether or not, as a matter of fact, the conductor brakeman did so assist, invite, or

direct plaintiff. Neither was the jury instructed as to what the rule of law might be in case they did not find that plaintiff was so invited or directed. No such instructions were requested by defendant. But the jury was instructed to find and determine in relation to questions of fact about which there was no practical conflict in the testimony, and upon which, if there had been no other testimony in the record excepting that relating to the matters mentioned in this instruction, the court should have directed a verdict in favor of defendant. Among others, the court gave to the jury the following instruction: "The court further instructs the jury that a passenger is warranted in obeying the directions of the servants and agents of the carrier, when given within the scope of their duty, unless such obedience leads to a known peril which a prudent person would not encounter. The court further instructs the jury that a passenger on a passenger train is warranted in obeying the directions of the conductor in charge of the train upon which the passenger is riding, or of a brakeman employed by the carrier in the conduct of such train and whose duty is to stand at the entrance of such train and assist passengers in entering or alighting from such train, and in this case if the jury believes from the evidence that the plaintiff obeyed the defendant's brakeman whose duty was to assist and direct passengers in alighting from and entering the train upon which he was a passenger, in attempting to get on the train, then he would not be guilty of contributory negligence in attempting to enter such moving train, unless by so obeying the direction of the brakeman he failed to use such care and caution as a reasonably prudent man, anxious to secure his own safety, would have used under the same circumstances." This was the only instruction given to the jury bearing upon the question of the invitation, direction, or assistance given plaintiff by the conductor or brakeman immediately preceding the accident. To the giving of this instruction appellant duty excepted on the ground, among other things, that it was misleading. Appellant contends that this instruction assumes that the conductor and brakeman were aiding and assisting and directing plaintiff in the getting aboard of this train. We are of the opinion that appellant is right in this contention. This instruction, as will be observed, does not submit to the jury the determination of the direct question of fact as to whether or not the conductor or brakeman did

assist, invite, and direct plaintiff in jumping on said train, but indirectly and inferentially assumes that they did so assist and direct plaintiff, and left for the jury to determine the question of fact as to whether or not plaintiff was obeying such directions of the conductor or brakeman at the time of the accident. We are of the opinion this instruction was clearly misleading to appellant's prejudice.

[7] The court also gave the following instruction, which was excepted to by appellant: "The court further instructs the jury that if you believe and find from the evidence that, while the plaintiff was a passenger from Minneapolis to McLaughlin, said train stopped at Mobridge on its line of road, and that the plaintiff alighted from said train to procure refreshment at such station, and that it was usual and customary for such train to allow passengers to get refreshments at this station, and if you further believe from the evidence that while the plaintiff was procuring such refreshments the signal was given for passengers to board said train, and thereafter a reasonably sufficient time was not given by the operatives of said train to enable plaintiff to get on before the same was put in motion, and that by reason thereof plaintiff was thrown down and injured as alleged in his complaint, or in either of the ways therein alleged, and that such failure, if any, to give such time to plaintiff to board the train was negligence, and but for such negligence, if any, plaintiff would not have been injured, or if you believe and find from the evidence that after said train was put in motion the plaintiff attempted to board the train, and while so doing the servants and employes of the defendant in charge of and operating said train caused the same as to give a sudden jerk, thereby throwing him down and injuring him in the manner or in either of the ways alleged in his complaint, and that the causing of said train to give such sudden jerk was negligence, and that but for such negligence, if any, plaintiff would not have been injured, then in either case, if you so find, you will find for the plaintiff such sum as will actually compensate him for the damage, if any, sustained by reason of such injury, unless you find for the defendant under the instructions hereinbefore or hereafter given to you." We are also of the opinion that this instruction was prejudicially misleading, and submitted questions of fact to the consideration

of the jury about which there was no material conflict. This instruction is misleading in that it might be inferred therefrom that the question was submitted as to whether or not the train departed before the expiration of the time scheduled for its stop. The testimony is practically undisputed that the train remained standing at the station in excess of fifteen minutes. Plaintiff by his testimony does not seriously attempt or undertake to fix the time the train remained at the station. True, plaintiff incidentally made the statement that it was some three or four minutes after the train stopped before he started for the saloon, and that he was gone only two or three minutes. But it is quite apparent that these statements as to time are the result of random guesswork. There is no pretension that plaintiff consulted a timepiece or had any definite knowledge as to what length of time the train in fact did remain at the station. He also stated, with reference to the time immediately after the accident, that the train was behind time, and for that reason the conductor would not permit his traveling companions to see him after the accident. If the train left the station ahead of time, it would not have been noticeably behind time, immediately after this accident, which happened so quickly. This testimony of plaintiff was too uncertain and indefinite for the purpose of fixing the time that said train remained at the station.

This instruction also includes the proposition that plaintiff was not given sufficient time in which to get aboard after the warning that the train was about to depart. As we view this case, defendant was under no duty to warn plaintiff of the starting of this train, within a business building a block distant from the depot. If defendant was in duty bound to so warn passengers a block distant, why not two or ten blocks distant?

Again, this instruction contains the erroneous idea that, because the defendant permitted passengers to alight from the train for the purpose of refreshments, they might go where they pleased for such refreshments, regardless of the distance from the train, and that defendant should warn and give them sufficient time to reach the train before starting, no matter where such passengers might happen to be scattered over the city. The undisputed testimony shows that ample warning was given to passengers of the approaching departure of this train. Again, there is an absolute want of testimony tending to show that the jerking of the train at

the time of the accident was anything other than the ordinary jerking necessarily incident to the starting of a properly operated, equipped, and managed train.

The judgment and order denying a new trial are reversed, a new trial granted, and the cause remanded.